## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0760257-CIV-UNGARO

| | | |
|---|---|---|
| EDWINA WILLIAMS, on behalf of herself and all others similarly situated, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CLASS REPRESENTATION |
| | § | |
| NATIONAL TRAVEL SERVICES, INC., PLAZA RESORTS, INC. d/b/a RAMADA PLAZA RESORTS ORLANDO/FT. LAUDERDALE VACATIONS, RESORT MARKETING HOLDINGS, INC., PINNACLE RESORTS HOLDING, INC., CONSOLIDATED TRAVEL HOLDINGS GROUP, INC., DANIEL LAMBERT and JAMES VERRILLO, | § § § § § § § § § § | JURY TRIAL DEMANDED |
| *Defendants*. | § | |

## PLAINTIFF'S MOTION FOR
## CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT

Plaintiff, Edwina Williams ("Ms. Williams"), on behalf of herself and all others similarly situated, hereby moves the Court for an Order certifying a Class and Subclass pursuant to Fed. R. Civ. P. 23, and in support shows the Court the following:

### I.        INTRODUCTION

This is a consumer class action against Florida travel companies that misleadingly market vacation packages to consumers. The Defendants[1] represent to consumers that their vacation packages constitute a week's vacation when, in actuality, the consumers must spend a significant

---

[1] The named Defendants in this case are closely-related entities National Travel Services, Inc. and Plaza Resorts, Inc. d/b/a Ramada Plaza Resorts Orlando/Ft. Lauderdale Vacations; three holding companies, Resort Marketing Holdings, Inc., Pinnacle Resorts Holding, Inc., Consolidated Travel Holdings Group, Inc.; and the two individuals who control all of these entities, Daniel Lambert and James Verrillo. *See* Complaint and Demand for Jury Trial (Doc. No. 1, Feb. 12, 2007) ("Complaint") ¶¶ 4-12 & Defendants' Answer and Affirmative Defenses (Doc. No. 14, May 16, 2007) ("Answer") ¶¶ 4-11; *see also infra* at 2-3.  All Defendants are referred to hereinafter collectively as "Defendants."

portion of their vacation attending a sales presentation for a timeshare resort. Additionally, the vacation packages fall within the definition of "vacation certificates" pursuant to the Florida Sellers of Travel Act, Fla. Stat. Ann. §§ 559.926, *et seq.* ("Travel Act"), such that, before the packages could be sold, Defendants were required to first submit their materials to the Florida Department of Agriculture and Consumer Services ("Florida DACS") for approval. Defendants, however, failed to submit their materials, and thus, all sales violate the Travel Act.

Ms. Williams, on behalf of herself and a Class and Subclass[2] of vacation purchasers, seeks damages, restitution and/or disgorgement from Defendants as a result of Defendants' violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, *et seq.* ("FDUTPA") for violations of the Travel Act, restitution pursuant to Florida common law, and injunctive relief.

Under a straightforward application of the standards for class certification pursuant to Fed. R. Civ. P. 23, the claims of Ms. Williams and the Class and Subclass are particularly suitable for class treatment. Because the acts and omissions at issue focus on Defendants' standard practices and common procedures, and because the claims of Ms. Williams and the Class and Subclass are all based on the same legal and remedial theories, it is abundantly clear that the prerequisites for class certification are established in this case. The Court should grant Ms. Williams' motion accordingly.

## II.    BACKGROUND

National Travel Services, Inc., Plaza Resorts, Inc. d/b/a Ramada Plaza Resorts Orlando/Ft. Lauderdale Vacations, Resort Marketing Holdings, Inc., Pinnacle Resorts Holding, Inc., and Consolidated Travel Holdings Group, Inc. are related companies that act in concert, and that share the same primary place of business and the same two officers and directors, Daniel

---

[2] The Class and Subclass are defined in the Complaint at ¶ 19; *see also infra* at p. 6.

Lambert and James Verrillo.  Complaint ¶¶ 4-12; Defendants' Answer and Affirmative Defenses (Doc. No. 14, May 16, 2007) ("Answer") at ¶¶ 4-11; Deposition of Daniel Lambert ("Lambert Dep."), Exh. A, at 11:14-25; 14:24-15:5; Deposition of James Verrillo ("Verrillo Dep."), Exh. B, at 5:8-16; 6:1-14; 8:1-15; 25:8-26:2; 26:22-28:2; 28:24-29:16; 54:6-14; 55:23-56:9.

Defendants are in the business of selling timeshare plans to consumers throughout the United States.  Complaint and Demand for Jury Trial (Doc. No. 1, Feb. 12, 2007) ("Complaint") ¶ 13; Declaration of Daniel Lambert (Doc. No. 18, June 1, 2007) ("Lambert Decl."), Exh. C, at 2; Assurance of Voluntary Compliance, Sept. 14, 2006 ("AVC"), Exh. D.  In order to induce consumers to attend timeshare sales presentations, and, ultimately, to purchase the timeshares, Defendants market and sell "vacation packages" (hereinafter, "Vacation Packages").  *See id.* These Vacation Packages typically consist of short trips to Florida and the Caribbean, including accommodations, meals, and a "cruise."  Complaint ¶ 13.  Defendants market their Vacation Packages by sending consumers mailings stating that the consumers have been pre-approved for a week-long vacation to Florida and the Caribbean.  *Id.*

The gravamen of Ms. Williams' claims is that Defendants' disregard for Florida consumer protection laws has allowed them to sell Vacation Packages that do not meet the legal requirements of the Florida Sellers of Travel Act and that were not the vacations that were promised, in violation of the FDUTPA.  Ms. Williams seeks class certification of four causes of action pursuant to Federal Rule of Civil Procedure 23.  Ms. Williams' first three causes of action seek relief for Defendants' statutory violations of the Florida Sellers of Travel Act in their deception of potential Florida tourists.

Tourism is the lifeblood of this State's economy.  Recognizing this fact, the Florida Legislature passed the Travel Act to protect consumers from unscrupulous travel companies. The regulatory scheme of the Travel Act includes four parts.  First, sellers of travel are required

to register with the state and provide specific details of their business, such as names and addresses, phone numbers, and corporate ownership interests.  Fla. Stat. § 559.928.  This information is retained so that the state can find (and enforce penalties against) any unscrupulous individuals if the vacations sold turn out to be fraudulent.  Second, the Travel Act requires sellers of travel to post a bond that can be used to refund payments made for bogus vacations.  Fla. Stat. § 559.929.  Third, in order to sell "vacation certificates," all travel packages, scripts, sales materials, and corresponding advertisements must be submitted to the state to make sure they contain the required disclosures.  Fla. Stat. § 559.9295.   Finally, the Travel Act includes enforcement provisions, including consumer remedies pursuant to the Florida Deceptive and Unfair Trade Practices Act.  Fla. Stat. § 559.934.

Defendants are governed by the Travel Act.  Section 559.927(11) of the Travel Act states, in pertinent part:

> 'Vacation Certificate' means any arrangement, plan, program, or vacation package that promotes, discusses, or discloses a destination or itinerary or type of travel, whereby a purchaser for consideration paid in advance is entitled to the use of travel, accommodations, or facilities for any number of days, whether certain or uncertain, during the period in which the certificate can be exercised, and those specific date or dates for its use are designated.

Fla. Stat. § 559.927(11).  Section 559.9295 of the Travel Act requires sellers of travel like Defendants who offer "vacation certificates" to register with the state and submit to the Florida DACS numerous materials prior to the sale of *any* vacation certificate.    Fla. Stat. § 559.9295.  The Travel Act specifically states that any violation of the Travel Act constitutes an unfair and deceptive trade practice pursuant to FDUTPA.  Fla. Stat. § 559.934.

Crucially, Defendants do not dispute that the Vacation Packages are offered for sale in exchange for a fee; that the Vacation Packages disclose the destination or itinerary or type of travel; that customers who purchase the vacation packages pay in advance are entitled to the use of travel, accommodations, facilities for a certain number of days; and that the consumers who

purchase the vacation packages can use them during a certain period of time on dates of their choice.  Verillo Dep., Exh. B, at 121:22-122:20; Defendant's Plaza Resorts, Inc. Response to Plaintiff's First Request for Admissions ("Admissions"), Exh. E, at p.2 (Requests Nos. 5-8).  Defendants likewise do not dispute that they failed to submit to the Florida DACS the items required by the Travel Act for the sale of "vacation certificates."  Admissions, Exh. E, at p. 3 (Request No. 10).

The Travel Act also requires that all mailings must conspicuously disclose all material facts and, specifically, the amount of time accommodations or facilities will be available.  Fla. Stat. § 559.9335(10) and (22).  However, in their description of the Vacation Packages, Defendants misrepresent or deceptively represent the amount of time the facilities and accommodations will be available because several hours during a day of "vacation" is subsumed by a mandatory sales presentation for a timeshare.  Complaint ¶¶ 14-16; *see also* AVC, Exh. D.  Many of Defendants' mail solicitations have no reference whatsoever to a "sales tour" of a timeshare development.  *See, e.g.*, Admissions, Exh. E, at 1-2 (Requests Nos. 1-2); Lambert Dep., Exh. A, at 109:15-25 and Exh. 74 thereto.  Other such solicitations include only a single, oblique reference to a presentation for "independent ownership resorts" in the fine print set forth on the reverse side of a mock-up of a travel voucher.  *See, e.g.*, Lambert Dep., Exh. A, at 67:21-70:5 & Exh. 69 thereto.

Ms. Williams fell victim to Defendants' deceptive and unfair practices.  Defendants mailed her a solicitation for a Vacation Package, which she purchased.  Complaint ¶ 16; Deposition of Edwina Williams ("Williams Dep."), Exh. F, at 37:3-21.  Upon arrival in Florida, Ms. Williams learned that she was required to attend a presentation for the sale of a timeshare as a condition of travel.  Complaint ¶ 16, Williams Dep., Exh. F, at 47:19-49:1; 66:17-69:10.  Complaint ¶ 16, Williams Dep., Exh. F, 66:17-69:10, 70:4-25.  The timeshare sales presentation,

from beginning to end, took approximately 5 1/2 hours to complete -- a significant portion of Ms. Williams' vacation, during which time she was, necessarily, unable to use the cruise and resort facilities she purchased as part of her Vacation Package.  Complaint ¶ 16.

Ms. Williams seeks to certify a Class consisting of herself and all persons in the United States who purchased a Vacation Package from Defendants, and a Subclass consisting of those Class members that actually used the Vacation Package and attended the timeshare sales presentation.  Complaint ¶ 19. [3]  Ms. Williams seeks class certification in connection with three causes of action pursuant to the FDUTPA, which allege that Defendants' violations of particular provisions of the Travel Act constitute unfair or deceptive acts or practices.  Complaint ¶¶ 26-37. Ms. Williams additionally seeks class certification of her common-law cause of action for unjust enrichment pursuant to Florida common law.  Complaint ¶¶ 38-39.

Interestingly, Defendants' solicitations and sales practices have been the subject of enforcement actions undertaken by the attorneys general of several states, resulting in consent orders and judgments restricting Defendants from essentially the same acts and practices complained of in this case.  Complaint ¶ 17.  Despite entering into an Agreed Judgment and Final Order in 2000 based on similar claims, Defendants were again investigated by the Florida Attorney General in 2006 for nearly identical conduct.  *Id.*  In particular, Defendants entered into an Assurance of Voluntary Compliance with the Florida Attorney General, in which Defendants agreed to clearly and conspicuously disclose in the body of any mailpiece that a tour of a timeshare was a condition of travel.  AVC, Exh. D, at 3.

---

[3] Excluded from the Class and Subclass are Defendants; any parent, subsidiary, or affiliate of Defendants or any employees, officers, or directors of Defendants; legal representatives, successors, or assigns of Defendants; and any justice, judge or magistrate judge of the United States who may hear the case, and all persons related to any such judicial office, as set forth in 20 U.S.C. § 455(b).  Complaint ¶ 19.

### III.    STANDARDS FOR CLASS CERTIFICATION

"In order to obtain class certification, Plaintiff must show that the four prerequisites of Rule 23(a) are met and that one of the provisions of Rule 23(b) applies."  *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 576 (M.D. Fla. 2006) (*citing* Fed. R. Civ. P. 23; *Kirkpatrick v. J. C. Bradford & Co.*, 827 F.2d 718, 721 (11th Cir. 1997)).  In this case, Ms. Williams seeks to certify the Class and Subclass under Fed. R. Civ. P. 23(b)(3), which requires that the Court find that questions of law or fact common to the members of the Class and Subclass predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

Importantly, "Rule 23 is liberally construed in order to meet its objectives."  *Id.*  "Once the requirements of Rule 23(a) and 23(b) are met, a Court must certify the lawsuit in question as a class action."  *Id.*

### IV.    THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED

The four threshold requirements of Federal Rule of Civil Procedure 23(a) are well-established.  "Rule 23(a) provides that one or more members may sue on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable ('numerosity'), (2) there are questions of law or fact common to the class ('commonality'), (3) the claims of the representative are typical of the claims of the class ('typicality'), and (4) the representative parties must fairly and adequately protect the interests of the class ('adequacy')."  *Hammett v. American Bankers Ins. Co. of Florida,* 203 F.R.D. 690, 693 (S.D. Fla. 2001) (*citing* Fed. R. Civ. P. 23(a)).  In determining whether the threshold requirements are met, "the Court must take factual allegations of the Complaint as true and examine only whether those factual allegations meet the requirements of Rule 23."  *Id.*

A.      *THE NUMEROSITY REQUIREMENT IS CLEARLY SATISFIED.*

In order to satisfy the numerosity requirement, Ms. Williams need only establish a reasonable estimate of the size of the Class and Subclass, demonstrating that joinder of all such members is impracticable.  *Hammett*, 203 F.R.D. at 694.  "In order to satisfy this requirement, Plaintiff need not allege the exact number and identity of the class members, but must only establish that joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'"  *Anderson v. Bank of the South, N.A.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987) (*quoting Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)).  "Classes as small as 25 have been certified."  *Hammett*, 203 F.R.D. at 694 (*citing Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1999)).

As Ms. Williams alleges in her Complaint, joinder of all members of the Class and Subclass is impracticable based on their number, which, upon investigation of counsel, was estimated to be in excess of 100,000 persons at the time of filing of the Complaint.  Complaint ¶ 25.  Defendants have since confirmed that this estimate is correct, testifying that Plaza Resorts has sold 277,313 Vacation Packages from 2003 to May 15, 2007.  Lambert Decl., Exh. E, at ¶ 5.  Defendants have further confirmed that, during the same time period, over 10,000 Vacation Package purchasers have purchased timeshare interests.  Thus, a far greater number have necessarily attended timeshare sales presentations.  Lambert Decl., Exh. E, at ¶ 8.  Accordingly, Ms. Williams has established that there are at least 100,000 members of both the Class and the Subclass. Defendants cannot reasonably contest that the numerosity requirement is met.  *Hammett*, 203 F.R.D. at 694.

B.      *THERE ARE QUESTIONS OF LAW OR FACT COMMON TO THE CLASS.*

"The threshold of 'commonality' is not high."  *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).  "Rule 23(a)(2) requires the presence of at least *one* issue affecting

all or a significant number of proposed class members." *Hammett*, 203 F.R.D. at 694 (*citing Kreuzfeld*, 138 F.R.D. at 599) (emphasis in original). "[A] court will normally find commonality where a question of law refers to standardized conduct by Defendants towards members of the proposed class." *In Re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991).

This case obviously involves at least one common question of law referring to Defendants' standardized conduct towards members of the Class, based on whether Defendants' sale of Vacation Packages to all Class members without first submitting to the Florida DACS the materials required for the sale of "vacation certificates" violates the Travel Act and, thus, the FDUTPA. *See* Complaint ¶¶ 13, 34-37; Admissions, Exh. C, at 3 (Requests Nos. 9-10). Similarly, whether Defendants misrepresented or deceptively represented the Vacation Packages to prospective purchasers in their marketing materials, as alleged by Ms. Williams, necessarily involves common questions of fact and law. Complaint ¶¶ 14-16, 27, 31. Whether Defendants have been unjustly enriched by their conduct is also a common issue to be decided. Complaint at ¶ 39. Accordingly, the commonality element is clearly satisfied. *Hammett*, 203 F.R.D. at 694.

C.    *THE CLAIMS OF MS. WILLIAMS ARE TYPICAL OF THE CLAIMS OF THE CLASS AND SUBCLASS.*

A class representative must possess the same interests and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). *Veal*, 236 F.R.D. at 577 (*citing Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004)). Like commonality, the threshold for meeting the typicality requirement is not high. "The class representative's claims are typical if her claim and those of the class arise from the same event or pattern or practice and are based on the same legal theory." *Hammett*, 203 F.R.D. at 694 (*citing Kornberg v. Carnival Cruise Alliance*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Crucially, typicality does not require identical claims or defenses, and a factual variation will not defeat typicality unless the factual position of the representative differs markedly from that of other members of the class. *Hammett*, 203

F.R.D. at 694 (*citing Kornberg*, 741 F.2d at 1337).

In this case, Ms. Williams clearly meets the typicality requirement as she is a member of both the Class and the Subclass.  Her claims for violations of the FDUTPA based on Defendants' misrepresentations of the Vacation Packages are based on the same legal and remedial theories as those of the class members she seeks to represent.  Complaint ¶¶ 27-29, 31-33.  Likewise, Ms. Williams' FDUTPA cause of action based on Defendants' sale of "vacation certificates" without submitting the required materials to the Florida DACS is based upon the exact pattern and practice and legal theory as the claims of the members of the Class.  Complaint ¶¶ 35-37.  Ms. Williams' claims are, accordingly, typical pursuant to Rule 23(a)(3), and the Court should find that this requirement is met.  *Hammett*, 203 F.R.D. at 694.

D.    *MS. WILLIAMS AND HER COUNSEL WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS.*

"Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representative has no interests antagonistic to the class, and (2) class counsel possess the competence to undertake the litigation."  *Hammett*, 203 F.R.D. 690, 695 (*citing Kirkpatrick v. J. C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987)).

Ms. Williams has no divergent interests which are antagonistic to the interests of either the Class or Subclass.  Her interests in this action are clearly in common with those of the proposed Class and Subclass, and she seeks the same relief based on the same course of conduct for all Class and Subclass members.  Moreover, Ms. Williams has demonstrated a sufficient level of understanding of the case, has traveled to Florida recently to be deposed in this matter, and will continue to fully prosecute this action as the class representative.  *See* Declaration of Edwina Williams, Exh. G.  Additionally, Ms. Williams' counsel are amply qualified to serve as counsel

for the Class and Subclass in this case.[4]  The adequacy requirement is, accordingly, satisfied. *Kirkpatrick*, 827 F.2d at 726-28; *Hammett*, 203 F.R.D. at 695.

## V.    THE PREDOMINANCE REQUIREMENT IS SATISFIED

"Common questions of law or fact predominate if 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, [] predominate over those issues that are subject only to individualized proof.'"  *Veal*, 336 F.R.D. at 579 (*quoting Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)) (citations omitted in original).  Importantly, "it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions."  *Veal*, 336 F.R.D. at 580 (*quoting Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)).  "The most important consideration is the substantive law applicable to the case and the proof which will be necessary to establish the claim."  *Hammett*, 203 F.R.D. at 698 (*citing Anderson v. Bank of the South, N.A.*, 118 F.R.D. 136, 150 (M.D. Fla 1987)).

Courts have routinely found predominance of common questions where the claims relate to a common course of conduct.  *See, e.g., Veal*, 236 F.R.D. at 581 (predominance requirement satisfied where plaintiff alleged common fraudulent scheme utilizing the same methodology against the entire class by defendants).  Cases dealing with the legality of standardized practices are generally appropriate for resolution by means of a class action because the pattern of conduct is the focal point of the analysis.  *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga.

---

[4] Marc R. Stanley, Roger L. Mandel and Martin Woodward of Stanley, Mandel & Iola, L.L.P. are extremely experienced class action attorneys.  *See* Stanley, Mandel & Iola, L.L.P. resume, Exh. H.  Lawyers from the firm have been lead counsel in numerous nationwide and statewide class actions leading to hundreds of millions of dollars in judgments and settlements.  *See id.*  Andrew S. Kierstead of the Law Offices of Andrew S. Kierstead and Janet R. Varnell and Brian W. Warwick of Varnell & Warwick, PA, are extremely experienced consumer and class action attorneys who have served as class counsel in numerous nationwide and statewide class actions.  *See* resumes of Andrew Kierstead and Varnell & Warwick, PA, Exh. I & J.  Timothy Blake is an experienced Florida attorney well-versed in civil trial and consumer law in the Southern District of Florida who is well-prepared to serve as local counsel in this case.  *See* resume of Timothy Blake, Exh. K.  Ms. Williams' counsel are, accordingly, well able to pursue this litigation on behalf of Ms. Williams and the Class and Subclass.

1983).  This is true even if the nature and amount of damages differ among the members of the class.  *Allapattah Serv. v. Exxon Corp.*, 33 F.3d 1248, 1261 (11th Cir. 2003), *Reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004).

The common questions at issue in this case predominate over any individual questions. As described above, the factual allegations do not significantly vary between Class and Subclass members.  All claims turn on the legality of Defendants' practices in selling the Vacation Packages when analyzed under the Travel Act and the FDUTPA, and when the elements of equitable unjust enrichment are applied.

A.    *FDUTPA.*

Violations of the Travel Act are *per se* violations of FDUTPA.  Fla. Stat. § 559.934.  *See also* Fla. Stat. § 501.204; *Gold Coast Racing, Inc. v. Home Depot U.S.A., Inc.*, 2006 WL 4579688, *2 (S.D. Fla. 2006); *Department of Legal Affairs v. Father & Son Moving & Storage, Inc.*, 642 So.2d 22, 26 (Fla. 4th DCA 1994).  For each of her three causes of action under the FDUTPA, Ms. Williams alleges that the requisite unfair or deceptive act or practice is a violation of a particular section of the Travel Act, which by its terms, makes "acts, conduct, practices, omissions, failings, misrepresentations, or nondisclosures which constitute a violation of this part…a deceptive and unfair trade practice for the purpose of [the FDUTPA]."  Fla. Stat. § 559.934; *see also* Complaint ¶¶ 27-28 (first cause of action); ¶¶ 31-32 (second cause of action); ¶¶ 35-36 (third cause of action).

Significantly, neither Ms. Williams nor any members of the Class and Subclass are required to establish actual reliance in connection with their FDUTPA claims, as is well-established under Florida law:

> When addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but rather the practice was likely to deceive a consumer acting reasonably in the same circumstances. *Davis [v. Powertel, Inc.]*, 776 So.2d 971 [(Fla. 1st DCA 2000)].  A deceptive or

> unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue. *Id.* at 973. Therefore, under the FDUTPA, a plaintiff need not prove the elements of fraud. *Id.; W.S. Badcock Corp. v. Myers*, 696 So.2d 776 (Fla. 1st DCA 1996); *Urling v. Helms Exterminators, Inc.*, 468 So.2d 451 (Fla. 1st DCA 1985).

*Gold Coast Racing, Inc.*, 2006 WL 4579688, *2 (citations in original). Moreover, Ms. Williams and the members of the Class and Subclass can establish actual injury in the form of insufficient value. *Collins v. DaimlerChrysler*, 894 So.2d 988, 990-91 (Fla. 5th DCA 2004).

Importantly, courts routinely certify claims under the FDUTPA, finding specifically that common issues predominate over any individual issues. *See, e.g., Veal*, 236 F.R.D. at 581 (finding predominance pursuant to Fed. R. Civ. P. 23(b)(3) where "[i]n essence, Plaintiff alleges that Defendant committed the same or very similarly unlawful acts utilizing the same methodology against the entire class."); *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699, 702-03 (Fla. 3rd DCA 2000) (reversing trial court's denial of class certification of FDUTPA cause of action based on undisclosed port charges); *Renaissance Cruises, Inc. v. Glassman*, 738 So.2d 436, 438-39 (Fla. 4th DCA 1999) (affirming class certification of FDUTPA claim based on undisclosed port charges). The FDUTPA claims alleged by Ms. Williams and the members of the Class and Subclass are essentially similar to the claims in *Veal, Costa Cruise Lines,* and *Glassman*, and this Court should accordingly find that the predominance requirement is met as to each of these three causes of action.

Significantly, Defendants are masters of their deceptive practices, in that they have perfected sales materials to produce the desired results of attracting timeshare sales presentation attendees, and they deliberately do not submit these materials to the Florida DACS pursuant to the Travel Act. *See supra* at 3-5. Any minor variations are not material to the claims being advanced, because no document clearly and conspicuously explains that the timeshare sales

presentation is a "condition of travel," and *no* materials were submitted to the state for approval. *Id*.

       1.      Sale of "Vacation Certificates" Without Submission of Required Materials to the Florida DACS.

Pursuant to Ms. Williams' third cause of action, alleged on behalf of the entire Class, Defendants violated FDUTPA by failing to comply with the FSTA's requirement for the submission of "vacation certificate" documents. Complaint ¶¶ 34-37. As to this cause of action, there will likely be no disputed issues of fact, particularly in light of Defendants' admissions that the Vacation Packages fall within the definition of "vacation certificates" under the Travel Act (*see* Verillo Dep., Exh. B, at 121:22-122:20 to Admissions, Exh. E, at p. 2 (Requests Nos. 5-8), and that Defendants do not submit to the Florida DACS the materials required for the sale of "vacation certificates" pursuant to the Travel Act, Fla. Stat. § 559.9295. Admissions, Exh. E, at p. 3 (Request No. 10). To the extent Defendants contend that they were not required by Florida law to make these submissions, this is an issue of law that the Court can resolve identically as to all Class members.

       2.      Misrepresentation of the Availability of Vacation Facilities.

Pursuant to her second cause of action, alleged on behalf of the Subclass, Ms. Williams alleges that Defendant violated the FDUTPA through the Travel Act, Fla. Stat. § 559.9335(10)(a), by misrepresenting or deceptively representing the amount of time accommodations or facilities would be available to members of the Subclass by misrepresenting or deceptively representing that the timeshare "tour" would take a significant amount of time away from their vacation. Complaint ¶ 31. The claims of Ms. Williams and all of the Subclass members pursuant to this cause of action will be established in the same manner. The only disputed issue is anticipated to be whether the marketing materials Defendants used were likely to deceive a customer acting reasonably in the same circumstances. *See Gold Coast Racing*,

2006 WL 4579688, *2.  Significantly, the Florida Attorney General already determined that Defendants' marketing materials misrepresented the timeshare sales presentation component of the Vacation Packages, and he obtained an assurance from Defendants that they would henceforth include clear and conspicuous language in the body of any mailpieces specifically stating that guided tours of vacation ownership resorts are conditions of travel.  AVC, Exh. D, at 3.  Regardless, this will be an issue that will be resolved identically as to all Subclass numbers.

   3. <u>Failure to Disclose a Material Fact.</u>

  As to her first cause of action, Ms. Williams alleges that Defendants' failure to disclose that mandatory attendance at a lengthy timeshare sales presentation was a component of a Vacation Package violates the FDUTPA by constituting a failure to disclose a material fact pursuant to the Travel Act, Fla. Stat. § 559.9335(22); *see also* Complaint ¶ 27.  Similar to the second cause of action, the only disputed issue is anticipated to be whether the marketing materials Defendants used are likely to deceive a consumer acting reasonably in the same circumstances -- an issue that will be resolved identically as to all Subclass members.

*B.* *UNJUST ENRICHMENT.*

  "The Restatement (First) of Restitution sets forth a four-part test for claims of unjust enrichment: (1) the unjust; (2) retention of; (3) a benefit received; (4) at the expense of another." *Veal*, 236 F.R.D. at 581 (*citing In re Terazosin Hydrochloride*, 220 F.R.D. 672, 697 (S.D. Fla. 2004)).

  In *Veal*, the United States District Court for the Middle District of Florida found that the predominance requirement was met as to the plaintiff's complaint for unjust enrichment based on the fact that the class members' proof would involve common issues of whether "(1) Defendant's deceptive and unfair trade practices regarding the sale of the "Etch" product resulted in it receiving income; (2) when the income enriched the Defendant at the expense of the class

members; and (3) whether as a matter of equity, Defendant should be required to return the profits to the class members." 236 F.R.D. at 581.

As in *Veal*, Ms. Williams and the members of the Class and Subclass all seek the restitution of the amounts Defendants received from them and retained in excess of the value of the Vacation Packages they purchased, based in part on the unavailability to them of their vacation time as a result of having to attend lengthy timeshare sales presentations.  The issues relevant to this claim are clearly susceptible to proof using common, generalized evidence.  The Court should accordingly find that the predominance requirement is met as to the unjust enrichment cause of action.

C.     *THE COURT SHOULD APPLY FLORIDA LAW TO THE CLAIMS OF ALL CLASS AND SUBCLASS MEMBERS, SUCH THAT THERE ARE NO VARIANCES IN STATE LAW THAT WILL OPERATE TO DEFEAT PREDOMINANCE.*

At least 16,768 Florida residents purchased Defendants' Vacation Packages during the class period.  Lambert Decl., Exh. C, at Exh. A thereto.  The majority of Class and Subclass members, however, reside throughout the United States in states other than Florida.  *Id*. However, pursuant to well-established Florida jurisprudence, the Court should apply the substantive law of Florida (specifically, the Travel Act, FDUTPA and Florida common law on unjust enrichment) to the claims of all members of the Class and Subclass, regardless of where they reside.  This is because Defendants' contacts with Florida are so significant that, pursuant to both the "significant aggregation of contacts" standard and the "significant relationship" test as applied by Florida courts, Florida law should apply to the claims of all members of the Class and Subclass.  Florida courts have already recognized that Florida law should govern claims arising from Florida vacations.

In *Renaissance Cruises, Inc. v. Glassman*, the Fourth District Court of Appeals affirmed the certification of a nationwide class of cruise purchasers who alleged claims under the

FDUTPA based on a cruise line's charging of an improper "port" charge in addition to the cruise price.  738 So.2d 436, 437-39.  The *Glassman* court first reviewed, with approval, the trial court's reasoning, noting that:

> [t]he court concluded that there was sufficient commonality of factual and legal issues and that Florida had sufficient contacts, creating state interest, such that application of Florida law to the entire class was not arbitrary or unfair.  The court noted that Florida has a great interest in protecting people dealing with corporations doing business within Florida.  Each class member's claim implicates Florida's interest in applying its law to adjudicate the dispute which involved a business principally located in Florida.

*Glassman*, 738 So.2d at 438.

The *Glassman* court proceeded to review the standard set forth by the United States Supreme Court in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818-19 (1985), in which the Supreme Court determined that the application of a state's substantive law to a class action can be made upon a finding that the state has a significant contact or aggregation of contacts creating state interest sufficient to make the choice of its law neither arbitrary nor fundamentally unfair.  783 So.2d at 439.  After noting that "certification is proper in deceptive trade practices cases even with a multi-state class membership" pursuant to the *Phillips* standard, the *Glassman* court reviewed facts very similar to the facts at bar, which ultimately supported the trial court's determination that the defendant had sufficient contacts with Florida to support the application of its law to the claims of the nationwide class in that case:

> The trial court found that Florida has significant connections, and the record gives support to its finding.  Appellant's principal place of business is in Florida, and thousands of Florida plaintiffs have been allegedly harmed by appellant's port charge practice.  For the most part, appellant's U.S. business operations are controlled and carried out from Broward County where payment for the cruises was made.  The port charges generally were paid to the various foreign ports through checks issued out of Fort Lauderdale.  Therefore, any overages were kept by appellant in Fort Lauderdale.  The cruise ticket contract and information originated in Broward County and bore appellant's Fort Lauderdale address.  Moreover, the tickets provided that Broward County courts would have jurisdiction over disputes.  This is indicative of the parties' mutual expectation that Florida law would apply to that transaction.  Florida clearly has a significant

> contact with the claim of overpayment of port charges made by each claimant. There is nothing arbitrary nor fundamentally unfair in applying the law of Florida to all the members of the class.

*Glassman*, 738 So.2d at 439.  Additionally, the *Glassman* court also found that the "significant relationship" test pursuant to Florida choice-of-law standards supported the application of Florida law to all claims, considering the relevant fact and policy considerations.  *Id.; see also Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618, 625-26 (Okla. 2003) (applying Michigan law to nationwide class based on significant aggregation of contacts).

Other Florida courts have reached the same conclusions in similar vacation circumstances.  In *Latman v. Costa Cruise Lines, N.V.*, the Third District Court of Appeals, following *Glassman*, reversed the trial court's denial of class certification and specifically held that Florida law should apply to the claims of the class.  758 So.2d at 701.

The facts of this case are in line with those of *Glassman* and *Costa Cruise Lines*, and they support the application of Florida law to all members of the Class and Subclass for the same reasons.  Defendants are all located in Florida, and, accordingly, fall under the requirements of the Travel Act.  Fla. Stat. §559.927(10); Complaint ¶¶ 4-9; Answer ¶¶ 4-9; Lambert Dep. Exh. A, at 4:8-15; Verillo Dep. Exh. B, at 4:8-20.  Fort Lauderdale is the location of Defendants' place of business on their marketing materials.  Lambert Dep. Exh. A, Exh. 69 & 74 thereto.  Defendants also conduct all their marketing from Florida, and send all their mailings from Florida.  Lambert Dep., Exh. A, 105:25-106:13.  Defendants also induce Vacation Package purchasers to come to Florida, where they are subjected to undisclosed timeshare sales presentations seeking to sell Florida timeshares.  Lambert Dep., Exh. A, 146:2-10.  Importantly, Defendants' activities are strictly regulated under Florida law by the Travel Act, which applies to Defendants' sale of Vacation Packages to consumers across the country.  Fla. Stat. 559.927.

As in *Glassman* and *Costa Cruise Lines*, the significant aggregation of contacts

Defendants have with the State of Florida is beyond dispute, such that Florida clearly has a substantial interest in preventing the unfair and deceptive acts and practices alleged by Ms. Williams in this case.  As well, pursuant to the "significant relationship" test under Florida choice of law rules, Florida has a "significant relationship" that supports the application of Florida law to all claims in this case.

D.     *A CLASS ACTION IS SUPERIOR TO OTHER METHODS FOR THE FAIR AND EFFICIENT ADJUDICATION OF THIS CONTROVERSY.*

Factors to be considered under the Court's analysis of whether the superiority requirement of Fed. R. Civ. P. 23(b)(3) is met include:

> (1) the interests of members of the class and individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of the class action.

*Veal*, 236 F.R.D. at 582 (*citing* Fed. R. Civ. P. 23(b)(3)).  "The purpose of the superiority requirement is consistent with the overall goals of Rule 23, which is to assure that the class action is the most efficient, effective and economic means of settling the controversy."  *Walco Investments*, 168 F.R.D. at 315, 337 (*citing* 7 A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure: Civil* § 1777 at p. 562 (1986)).

Ms. Williams and her counsel are aware of no other parallel or separate actions against Defendants currently pending concerning Defendants' deceptive and unfair practices in connection with its Vacation Packages.  Moreover, this is consistent with the understanding of Defendant Lambert, per his own testimony.  Lambert Dep. Exh. A, at 77:17-22.  This fact alone is sufficient to satisfy the first two elements of the superiority analysis.  *See Walco Investments*, 168 F.R.D. at 337.

As to the third factor, it is clear the concentrating the litigation of the claims of Ms.

Williams and the Class and Subclass in this forum is desirable, as Defendants are headquartered in Fort Lauderdale, Florida, within the Southern District of Florida where this case is pending. Concentration of the claims here will thus cause no inconvenience to Defendants for purposes of travel and conducting discovery.  As well, concentration of the litigation in one forum avoids the potential for multiplicity of lawsuits across the country.  This action could also provide the forum for the vindication of the rights of the members of the Class and Subclass who otherwise likely be without effective strength to litigate their claims against Defendants.  *See id.* at 337.  Finally, class members in other states may have difficulty enforcing injunctive relief upon these out-of-state Defendants.  The third factor, thus, strongly favors certification.

Finally, as to the fourth factor, this case will not be overly difficult or burdensome to manage as a class action.  This is primarily because, as Ms. Williams argues above, common issues of fact and law clearly predominate over any issues unique to individual members of the Class and Subclass.  The claims advanced depend on statutory violations of the Travel Act and the enforcement thereof under the FDUTPA.  Neither will any individual issues concerning differing amounts of damages to be awarded to members of the Class and Subclass render this case unmanageable as a class action; in any event, potential disparate damages should not preclude a trial court's certification of a class.  *See In re Terazosin Hydrochloride*, 220 F.R.D. 672, 699 (S.D. Fla. 2004).  Thus, the fourth superiority factor -- like the remaining three factors -- weighs in favor of a finding of superiority, and this Court should accordingly determine that the superiority requirement is met in this case.

## CONCLUSION

For the reasons set forth above, Plaintiff, Edwina Williams, respectfully requests the Court to grant the foregoing Motion for Class Certification.

Respectfully submitted,

s/Timothy Carl Blake
Timothy Carl Blake, Esq.
TIMOTHY CARL BLAKE, P.A.
66 W. Flagler Street
Suite 1000
Miami, FL  33130

Marc R. Stanley
Texas Bar No. 19046500
Roger L. Mandel
Texas Bar No. 12891750
Martin Woodward
Texas Bar No. 00797693
STANLEY, MANDEL & IOLA, LLP
3100 Monticello Avenue, Ste. 750
Dallas, Texas 75205
214.443.4300 (telephone)
214.443.0358 (facsimile)

Andrew S. Kierstead
LAW OFFICE OF ANDREW KIERSTEAD
1001 SW 5th Avenue, Suite 1100
Portland, OR  97204

Janet R. Varnell
Brian W. Warwick
VARNELL & WARWICK, P.A.
20 La Grande Blvd.
The Villages, FL  32159

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, and that a copy was served via CM/ECF on 27th of July, 2007 to:

Richard W. Epstein, Esquire
Haas A. Hatic
Rebecca Bratter
GREENSPOON MARDER, P.A.
Attorneys for Defendants
100 West Cypress Creek Road
Suite 700
Fort Lauderdale, FL 33309
richard.epstein@greenspoonmarder.com
haas.hatic@greenspoonmarder.com
rebecca.bratter@greenspoonmarder.com

s/Timothy Carl Blake_____
Timothy Carl Blake