UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 07-60257-CIV-UNGARO

EDWINA WILLIAMS, an individual, on behalf
of herself and all others similarly situated,

    Plaintiff,

v.

NATIONAL TRAVEL SERVICES, INC., et al.,

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

THIS CAUSE comes before the Court upon Plaintiff's Motion for Class Certification and Memorandum in Support, filed July 27, 2007 (D.E. 31). Defendants filed their Response on September 10, 2007 (D.E. 45) to which Plaintiff replied on September 28, 2007. (D.E. 54). The matter is now ripe for disposition.

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises.

BACKGROUND

Plaintiff brings this consumer class action on behalf of herself and a class of consumers against Florida travel companies that she alleges misleadingly market vacation packages. (Pl.'s Mot. 1.) The Complaint consists of four counts, including three claims for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. Ann. §§ 501.201, *et seq.*, and a claim for unjust enrichment. (*See* Compl. ¶¶ 26-39.) Plaintiff seeks "[d]amages, restitution, or disgorgement pursuant to the FDUTPA" and "[r]estitution or disgorgement of the amounts by which Defendants have been unjustly enriched," plus attorneys' fees and costs.

(Compl. ¶ 40.)

Plaintiff alleges that Defendants are in the business of selling timeshare plans to consumers throughout the United States. (Pl.'s Mot. 3.) Plaintiff claims that in order to induce consumers to attend sales pitches for these timeshare properties, Defendants sell vacation packages, which typically consist of trips to tropical destinations, with accommodations, meals, and some activities included in the price ("Vacation Packages"). (*Id*.) According to Plaintiff, Defendants market these Vacation Packages through mailings informing consumers that they have been pre-approved for a Vacation Package. (*Id*.)

After receiving market materials from Defendants, Plaintiff purchased a Vacation Package, which promised her a vacation in Florida. (Compl. ¶ 16.) Plaintiff claims that upon arriving in Florida for her vacation, Defendants required her to attend a five and one-half hour timeshare sales presentation, during which time she was necessarily unable to use the resort facilities to which she purchased access as part of her Vacation Package. (*Id*.) Plaintiff states that prior to her arrival in Florida, Defendants never disclosed to her either the existence of or the allegedly mandatory nature of this presentation. (*Id*.)

The Florida Sellers of Travel Act, Fla. Stat. Ann. §§ 559.926, *et seq.* ("Travel Act"), requires all sellers of travel, such as Defendants, to submit any marketing materials relating to "vacation certificates" to the Florida Department of Agriculture and Consumer Services ("Florida DACS") for approval before such vacation certificates are sent to consumers. *See* Fla. Stat. Ann. § 559.9295. The Travel Act also requires that all mailings conspicuously disclose all material facts including, specifically, the amount of time accommodations or facilities will be available to consumers. *See* Fla. Stat. Ann. §§ 559.9335(10) and (22). Plaintiff argues that Defendants'

Vacation Packages qualify as "vacation certificates" as such term is defined by the Florida Sellers of Travel Act ("Travel Act"). (Pl.'s Mot. 2.) Thus, Plaintiff contends, Defendants' failure to submit their marketing materials to the Florida DACS for approval was a violation of the Travel Act. (*Id*. at 4-5.) Plaintiff further argues that Defendants' failure to disclose that Plaintiff would be required to attend a timeshare sales tour constitutes both the omission of a material fact and the misrepresentation of the availability of vacation facilities in violation of the Travel Act. (*Id*. at 5.) Finally, in addition to claiming that Defendants' breaches of the Travel Act constitute *per se* violations of FDUTPA, Plaintiff alleges that Defendants were unjustly enriched by selling Vacation Packages for prices greater than their value. (Id. at 4; Compl. ¶ 39.)

Pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff moves to certify the following class and subclass:

> The Class: All persons in the United States (the fifty states and the District of Columbia) who purchased a Vacation Package from Defendants;
>
> The Subclass: All Class members who used the Vacation Package and who were required to attend, and did attend, a timeshare sales presentation in connection with their use of the Vacation Package.
>
> Excluded from this Class and Subclass are Defendants; any parent, subsidiary, or affiliate of Defendants or any employees, officers, or directors of Defendants; legal representatives, successors, or assigns of Defendants; and any justice, judge or magistrate judge of the United States that may hear the case, and all persons related to any such judicial office, as set forth in 28 U.S.C. § 455(b).

(Compl. ¶ 19.)

## LEGAL ANALYSIS

To maintain a class action, Plaintiff bears the burden of showing that the proposed class satisfies the four prerequisites of Federal Rule of Civil Procedure 23(a) and one of the three

3

provisions of Rule 23(b).  Rule 23(a) provides that one or more plaintiffs may sue on behalf of all members of a proposed class only if: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the representative are typical of the claims of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").  *See* Fed. R. Civ. P. 23(a).   Rule 23(b) permits a class action if Plaintiff can demonstrate one of the following: (1) the prosecution of separate actions would create inconsistent adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class thereby permitting injunctive or declaratory relief with respect to the class as a whole; or (3) questions of law or fact common to the class predominate over issues affecting individual members.  *See* Fed. R. Civ. P. 23(b).

In making these determinations, the Court does not conduct a preliminary inquiry into the merits of the action.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  Rather, "the Court's inquiry is limited to whether the requirements of Rule 23 have been satisfied." *Id*. at 177-78.  However, this limitation should not be applied so strictly that the trial court's "examination of the factors necessary to a reasoned determination of whether plaintiff has met her burden of establishing each of the Rule 23 class action requirements" is "artificially limit[ed]."  *Love v. Turlington*, 733 F.2d 1526, 1564 (11th Cir. 1984); *see also Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489 (S.D. Fla. 2003); *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 695 (S.D. Fla. 1992).  Thus, the Court may look beyond the pleadings in determining whether to grant Plaintiff's Motion for class certification.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Cooper v. S. Co.*, 390 F.3d 695, 712-13 (11th Cir. 2004) (recognizing that "both

4

the Supreme Court and [the Eleventh Circuit] have noted since *Eisen* that evidence pertaining to the requirements embodied in Rule 23 is often intertwined with the merits, making it impossible to meaningfully address the Rule 23 criteria without at least touching on the 'merits' of the litigation") (citations omitted); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722-23 (11th Cir. 1987); *Love*, 733 F.2d at 1564.  The Court may make "an informed assessment of the parties' evidence" in determining whether the class should be certified. *Cooper*, 390 F.3d at 712; *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.12 (1978); *Nelson v. U.S. Steel Corp.*, 709 F.2d 675, 679 (11th Cir. 1983).  "Actual, not presumed, compliance with the requirements of Rule 23 is necessary at all stages when the action is proceeding as a class action."  *Kelly v. SabreTech, Inc.*, 195 F.R.D. 48, 52 (S.D. Fla. 1999) (citing *Falcon*, 457 U.S. at 161).  In the instant case, the proposed class representative seeks certification under Rule 23(b)(3).  This rule allows certification of a class when common questions of law or fact predominate ("predominance") and the class action is superior to other available methods for fair and efficient adjudication of the controversy ("superiority").  *See* Fed. R. Civ. P. 23(b)(3).

Prior to undertaking a Rule 23 analysis, a court must consider the adequacy of the class definition.  *See, e.g., O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477 (S.D. Fla. 2006); *Perez v. Metabolife Int'l., Inc.*, 218 F.R.D. 262, 266 (S.D. Fla. 2003) (analyzing class definition as a separate question prior to analyzing the Rule 23(a) prerequisites).  Courts thoroughly examine proposed class definitions because of the importance of being able to distinguish class members from those outside the class.  *See Perez*, 218 F.R.D. at 266.  "A vague class definition portends significant manageability problems for the court."  *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 660 (M.D. Fla. 2001).  In the Eleventh Circuit, courts have identified two

5

main grounds for finding a proposed class definition inadequate: (1) the class definition is too broad or vague and/or (2) the class definition would require an inordinate number of individualized determinations to ascertain class membership.  *See Perez*, 218 F.R.D. at 269; *O'Neill*, 243 F.R.D. at 477-478.

In this case, the Court finds that the current class definition[1] suffers from both of these defects.  First, the defined class is overly broad in relation to the issues Plaintiff raises.  *See O'Neill*, 243 F.R.D. at 477 ("The proposed class definition is inadequate because it is overly broad in relation to the issues O'Neill raises").  Plaintiff's main claims for which it seeks class certification[2]–misrepresentation of the availability of vacation facilities, failure to disclose a material fact, and unjust enrichment (*See* Pl.'s Mot. 14-15)–focus on Defendants' allegedly deceptive conduct in failing to disclose to their consumers that their Vacation Packages require attending a timeshare sales pitch.  A class defined as all persons who purchased Vacation Packages and were required to attend, and did attend, a timeshare sales presentation would sweep in persons who knew about the timeshare presentation requirement prior to purchasing the Vacation Package.[3]  Defendants clearly did not deceive such persons in any way, though they

---

[1] In this case, Plaintiff has defined both a class and a subclass.  (*See* Compl. ¶ 19.)  It is unclear why Plaintiff has chosen to define her proposed class in this manner; listing a single subclass serves only to further pare down and focus the definition of the class itself.  As such, the Court will regard Plaintiff's subclass as the proposed class for purposes of the certification analysis.

[2] Plaintiff also puts forth a claim that Defendants have violated FDUTPA by failing to submit required materials to the Florida DACS.  (*See* Pl.'s Mot. 14.)

[3] Although this defect is only applicable to Plaintiff's first, second, and fourth causes of action, other issues render Plaintiff's third cause of action unfit for class certification.  *See infra* text accompanying note 9.

would meet the criteria for inclusion in Plaintiff's overbroad class.

More damaging, though, is the fact that the proposed class definition, even if narrowed, would require the Court to conduct individualized factual findings to determine which claimants are in the class.[4] Before a person who purchased a Vacation Package and attended a timeshare sales presentation could be included in the class, the Court would first need to determine whether such person was required to attend a timeshare sales presentation and, if so, whether such person was alerted to this requirement prior to purchasing the Vacation Package.[5] Each of these inquiries relies upon highly individualized and specific facts that would differ for each person and, thus, would necessitate a mini-hearing for each possible claimant who attended one of Defendants' timeshare sales presentations. Determining the class membership would devolve into a series of fact findings that would effectively render the case unmanageable. As a result,

---

[4] Plaintiff appears to have slightly changed her class definition in her Reply memorandum to include all persons who purchased Vacation Packages from Plaintiff and attended a timeshares sales presentation pursuant thereto (removing the criterion that a class member have been required to attend the timeshares sales presentation). (*See* Pl.'s Reply 11.) While this revised class definition cures the manageability defect by rendering the class membership readily ascertainable, its overbreadth now becomes its undoing. This class definition would pull in, among others, persons who either were told of the timeshare sales presentation at the time of the purchase of the Vacation Package or who were not required to attend a timeshare sales presentation but who nonetheless willingly attended such a presentation during their use of a Vacation Package. Such persons would not be able, in good faith, to join Plaintiff in her class-related claims of either misrepresentation of the availability of vacation facilities, failure to disclose a material fact, or unjust enrichment (*See* Pl.'s Mot. 14-15) because the facts surrounding such class members' attendance at the timeshare sales presentation would preclude them from proving such claims. As a result, even Plaintiff's revised class definition is a poor fit for her claims in this action.

[5] Although this defect is only applicable to Plaintiff's first, second, and fourth causes of action, other issues render Plaintiff's third cause of action unfit for class certification. *See infra* text accompanying note 9.

the Court finds that Plaintiff has failed to adequately define the class,[6] and the Court cannot presently imagine a way to redefine the class so as to cure the aforementioned defects.

Even were the Court to accept Plaintiff's proposed class definition, Plaintiff would still fail to meet the requirements of Rule 23(b)(3).[7] Rule 23(b)(3) allows certification of a class when common questions of law or fact predominate ("predominance") and the class action is superior to other available methods for fair and efficient adjudication of the controversy ("superiority").  Fed. R. Civ. P. 23(b)(3).

Predominance

Rule 23(b)(3)'s requirement "[t]hat common questions of law or fact predominate over individualized questions means that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'"  *Rutstein v. Avis Rent-A-Car Sys, Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000), *cert. denied,* 532 U.S. 919 (quoting *Kerr v. City of West Palm Beach,* 875

---

[6] The Court notes Defendant's entreaty that the Court decline to follow *O'Neill* and its brethren.  (*See* Pl.'s Reply 11 n.4.)  However, the Court disagrees with Plaintiff that such cases inappropriately "intertwin[e] their consideration of a class definition with an evaluation of whether common issues would predominate over individual issues based on the claims alleged in the cases."  *Id*.  In attempting to determine whether a proposed class is appropriately defined, *O'Neill* and similar cases concern themselves with, among other things, whether the class as defined aligns well with the plaintiff's claims in terms of who would properly be eligible for recovery.  *See, e.g.*, *O'Neill*, 243 F.R.D. at 478-79 (explaining that the plaintiff's proposed class definition would include individuals who could not join in plaintiff's claims because of either different factual circumstances or an obvious lack of damages); *Colomar v. Mercy Hospital, Inc.*, 242 F.R.D. 671, 676 (S.D. Fla. 2007).  In the class definition discussion, the only analysis such courts undertake related to individual questions of fact regards whether the courts would need to conduct individualized hearings to determine class membership.  *See id.*

[7] The Court's analysis here assumes, without deciding, that Plaintiff can satisfy the elements of Rule 23(a).

F.2d 1546, 1558 (11th Cir. 1989)).  The "predominance inquiry focuses on 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and is 'far more demanding' than Rule 23(a)'s commonality requirement." *Hammett v. Am. Bankers Insur. Co. of Florida*, 203 F.R.D. 690, 698 (S.D. Fla. 2001) (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997))).  "The most important consideration is the substantive law applicable to the case and the proof which will be necessary to establish the claim." *Id*. (citing *Anderson v. Bank of the South, N.A.*, 118 F.R.D. 136, 150 (M.D. Fla. 1987)).

In deciding whether class or individual issues predominate in a putative class action the court must consider "the claims, defenses, relevant facts, and applicable substantive law," in order "to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)).  To determine whether an issue predominates, the court must consider "what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Id*. (quoting *Rutstein*, 211 F.3d at 1234).  Common issues of fact and law predominate if they "have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Id*. (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001)).  Where, "after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3). *Id*. (citing *Perez v. Metabolife Int'l, Inc.*, 218

9

F.R.D. 262, 273 (S.D. Fla. 2003)).  "[I]f the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important." *Id*. (citing *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 322 (5th Cir. 1978)).

In this case, the Court finds that the Rule 23(b)(3) predominance requirement cannot be satisfied because the putative class members' claims will involve numerous individualized issues of fact that would predominate over any common issues.  For her first cause of action, Plaintiff alleges that in selling their Vacation Packages, Defendants failed to disclose the material fact that purchasers must attend a timeshare sales presentation during their vacation.  (Pl.'s Mot. 15.)  In support of class certification, Plaintiff claims that "the only disputed issue is anticipated to be whether the marketing materials Defendants used are likely to deceive a consumer acting reasonably in the same circumstances" and that this issue "will be resolved identically as to all Subclass members."  (*Id*.)  However, Plaintiff appears to ignore the fact that Defendants have different marketing materials for each state.  (Defs.' Resp. 22.)  As an initial matter in adjudicating Plaintiff's first cause of action, the Court would need to review each different mail piece sent by Defendants to consumers in order to determine whether such material is likely to deceive a reasonable consumer.  Because the class consists of consumers from all 50 states, the Court would likely have to make 50 different findings regarding this "likely to deceive" question.  Further, for any class members sent marketing materials that do not disclose a timeshare attendance requirement, the Court would need to ascertain whether such class members were actually required–not given the choice–to attend a timeshare sales presentation, which would necessitate individualized factual findings regarding each class member's experiences during the

10

vacation.  Also, Defendants would presumably wish to present class member-specific defenses to these claims.  The only real common issue for this cause of action would be whether a violation of the Travel Act constitutes a *per se* violation of FDUTPA.  (*See* Pl.'s Mot. 15.)  The resolution of this one common issue on behalf of the entire class will barely further each individual class member's claims against Defendants, *see Klay*, 382 F.3d at 1254, and, thus, the predominance requirement is not met for Plaintiff's first cause of action.

Plaintiff's second cause of action alleges that Defendants misrepresented the amount of time that vacation facilities would be able because of their failure to disclose the timeshare presentation requirement.  (Pl.'s Mot. 14.)  The analysis here is similar to that for the first cause of action.  Plaintiff again states that the only disputed issue is whether the marketing materials are likely to deceive a reasonable consumer.  (*Id*.)  The same problem regarding individualized findings exists, though, because Defendants use different marketing materials for different states.  (See Defs.' Resp. 22.)  Additionally, for each proposed class member who received a mail piece that did not mention mandatory attendance at a sales pitch, the Court would need to determine whether such person was required to attend a timeshare sales presentation to resolve whether an actual misrepresentation occurred.  This series of fact-findings entailed here would prove exceedingly difficult to manage and such hardship would easily eclipse any small utility gained in deciding such issue on behalf of the class.  Like for her first cause of action, Plaintiff falls short of demonstrating predominance regarding her second cause of action.[8]

---

[8] In her Motion, Plaintiff looks to an Assurance of Voluntary Compliance ("AVC") entered into between Defendant Plaza Resorts, Inc. and the Florida Attorney General's Office as proof that Defendants' marketing materials misrepresent the timeshare sales presentation component of the Vacation Packages and that Defendants had previously promised to specifically state on each future mail piece that timeshare sales presentations were conditions of travel.  (Pl.'s

Any attempt to prove Plaintiff's fourth cause of action–that Defendants were unjustly enriched by selling Vacation Packages to class members for more than their value (Compl. ¶ 39)–inherently relies heavily on the same individualized factual findings that doomed the first two causes of action in the quest to establish predominance.  Plaintiff's unjust enrichment claim is based on her assumption that all class members were forced to attend timeshare presentations that diminished the Vacation Packages' value and were not aware of such requirement when purchasing Vacation Packages.  (*See* Pl.'s Mot. 16.)  Thus, the same individualized fact findings necessitated by Plaintiff's first and second causes of action would be required to investigate her fourth cause of action, meaning that the predominance element would again not be satisfied.  Plaintiff leans heavily upon *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572 (M.D. Fla. 2006), in her attempt to establish predominance with respect to her unjust enrichment claim.  (See Pl.'s Mot. 15-16.)  Plaintiff's reliance is misplaced, though, as *Veal* found predominance with respect to an unjust enrichment claim where "[t]he same common operative facts form the basis of the class members' claims."  *Veal*, 236 F.R.D. at 581.  As explained above, the operative facts for each class member trying to prove unjust enrichment would be different, for different mail pieces with different language were sent to class members in different states, and class members presumably had different reasons for attending the timeshare presentations.

---

Mot. 15.)  However, having reviewed the AVC, the Court notes first that Defendant Plaza Resorts, Inc. is the sole Defendant implicated by the AVC and such Defendant does not even admit any liability pursuant thereto. (Pl.'s Mot. Ex. D at 1.)  Additionally, Defendant Plaza Resorts, Inc. only agrees to include timeshare presentation language on mail pieces that require attendance at such presentations as a condition of travel. (*Id*. at 3.)  As such, Plaintiff's argument here is unavailing because it does not mitigate the fact that the Court would still need to conduct individualized factual findings for each proposed class member to determine whether such class member's attendance at a timeshare presentation was mandatory in order to analyze whether Defendants violated FDUTPA with respect to such class member.

Much like her other causes of action, Plaintiff's third cause of action, which alleges that Defendants sold "vacation certificates" without submitting the necessary materials to the Florida DACS (Pl.'s Mot. 14), fails the predominance analysis. Although the Court would be able to determine the one issue of fact common to all class members–whether Defendants submitted their marketing materials to the Florida DACS for approval–individual issues of fact would still overwhelm the case. For the Defendants' alleged failure to submit in violation of Fla. Stat. § 559.9295, Plaintiff requests damages pursuant to Fla. Stat. § 501.211(2) on behalf of herself and the entire proposed class. Section 501.211 sets forth the remedies that individuals who have been aggrieved by a violation of FDUTPA can seek, specifying that (1) declaratory and/or injunctive relief is available and (2) actual damages are recoverable. Fla. Stat. § 501.211. Florida courts have defined actual damages as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. 3rd DCA 1984); *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2nd DCA 2006). Presumably, Plaintiff argues that she suffered actual damages because her vacation certificate would have had a higher market value had it been properly submitted to the Florida DACS because any misrepresentations regarding timeshare tour requirements and vacation facility availability would have been eliminated by the Florida DACS.[9] However, as mentioned above, Plaintiff's proposed class encompasses claimants from all 50 states. Because Defendants send out state-specific mail pieces (Defs.' Resp. 22), the Court would need to analyze

---

[9] Although Plaintiff has not alleged actual damages for this cause of action with any specificity, the Court will assume this to be Plaintiff's damages theory, as it is the only logical, albeit highly speculative, claim that the Court can imagine.

at least 50 different mail pieces for any damages calculation. Additionally, the market values for these vacations (both in original and hypothetically corrected form) would likely vary widely depending on any number of factors, including a claimant's location, time of year, length of vacation, a claimant's proximity to an airport, etc. As a result, these individual issues regarding damages, which would constitute the bulk of the Court's analysis of Plaintiff's third cause of action, would easily predominate over the single common issue of fact related to this claim, which common issue could be quickly dealt with in individual cases.

Even assuming, *arguendo*, that Plaintiff could demonstrate predominance with respect to any of her causes of action, it is axiomatic that courts do not certify single issues for class treatment when the case as a whole falls short of satisfying the requirements of Rule 23. *See, e.g., O'Neill*, 243 F.R.D. at 481. Thus, the fact that individual issues would predominate over common issues when adjudicating three of Plaintiff's four causes of action leads to the conclusion that this case is unsuitable for class certification.

Superiority

The Rule 23(b)(3) superiority provision requires the Court to determine "that the class action device is superior to other available methods for the fair and efficient adjudication" of the controversy. *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 700 (S.D. Fla. 2004). The four factors the Court should consider in making this determination are (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management

of the class action. Fed. R. Civ. P. 23(b)(3). In support, Plaintiff argues that the fact that there are no similar parallel or separate actions currently pending against Defendants satisfies the first two prongs of the inquiry. (Pl.'s Mot. 19.) Plaintiff also posits that concentration of the litigation in this forum does not inconvenience Defendants in the least, while avoiding the potential for multiple similar lawsuits around the country and providing class members who otherwise would lack effective strength to litigate their claims a chance to vindicate their rights. (*Id*. at 20.) As evidence in meeting the fourth prong, Plaintiff recycles its predominance arguments. (*See id.*) However, the Court does not believe that Plaintiff's showing with respect to the first three factors is strong enough to overcome the glaring lack of predominance and the overwhelming manageability problems presented by the proposed class definition. "Severe manageability problems are a prime consideration that can defeat a claim of superiority." *Perez,* 218 F.R.D. at 273. As a result, the Court finds that class certification is not superior to other available methods for the fair and efficient adjudication of this controversy.

      Plaintiff has neither adequately defined the proposed class nor demonstrated that common issues predominate in any of her four causes of action against Defendants. Plaintiff, nonetheless, argues that judicial estoppel should bar Defendants from opposing class certification here based on her claim that Defendants implicitly acceded to the certification of a similar class in an Illinois state court case in 2004 for the purposes of settlement. (Pl.'s Reply 3.) Judicial estoppel is an equitable doctrine utilized at a court's discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). It is "designed to prevent parties from making a mockery of justice by inconsistent pleadings." *Allapattah Services, Inc. v. Exxon Corp.*, 372 F.Supp.2d 1344, 1368 (S.D. Fla. 2005) (citing *American Nat'l Bank of Jacksonville v. Federal Dep. Ins. Corp.*, 710 F.2d 1528, 1536

(11th Cir. 1983). Eleventh Circuit Courts consider two factors in deciding whether to apply judicial estoppel to a case. *Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001). "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id*.

As an initial matter, judicial estoppel is usually only invoked when a party submits inconsistent pleadings in the same case. *See, e.g., Allapattah Services, Inc.*, 372 F.Supp.2d at 1369; *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 659 (7th Cir. 2004). In arguing that judicial estoppel is routinely applied in the class certification context, Plaintiff tries to hang her hat on the Seventh Circuit's finding in *Carnegie*. *See Carnegie*, 376 F.3d at 659. However, such case is easily distinguishable. The *Carnegie* court estopped the defendants from objecting to certification of the same class that they had previously argued in favor of in the settlement context *in the same case*. Here, Defendants have never agreed to certify Plaintiff's proposed class in this case. It is immaterial that Defendants previously agreed to class certification in an unrelated Illinois state case.

Second, and most important, Plaintiff has presented no evidence that would establish that Defendants' opposition to class certification in this matter would undermine the integrity of the judicial system. Defendants' prior acquiescence to class certification, solely for the purposes of settlement, occurred in a different case, in a different court, with different facts, under a different state's laws. Thus, the fact that Defendants have presented objections to class certification herein appears to the Court to be entirely permissable. *See id.* Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Class Certification is DENIED

in accordance with this Order. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion for Hearing is DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 10th day of December, 2007.

/s/ Ursula Ungaro
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record